## COCHRAN v WIDRA et

Ohio Appeals, 9th Dist, Summit Co

No 1886. Decided March 31, 1931

Doolittle, Foust & Holden, Akron, for plaintiff in error.

Lee J. Myers, Akron, for defendants in error.

## OPINION

By FUNK, J.

The parties are in this court in the reverse order from that in which they were in the trial court, and will be referred to as plaintiffs and defendant, as they were in that court.

In March, 1927, plaintiffs entered into a contract with defendant, whereby they traded to him their equity in certain real estate, valued at $3600, for a three-year lease of a 140-acre farm at a rental value of $1800 and certain personal property, to-wit, 10 cows, 2 horses, and oats, hay and farm machinery, all valued at $1800.

Among other things the lease provided that defendant was to furnish the material and plaintiffs were to do the work in repairing the buildings and fences on the farm, with some provisions as to the manner of farming.

Plaintiffs entered into possession of the farm and did some repairing to the dwelling, and executed and delivered their deed to defendant for their property, and he took possession of it.

The record shows that the buildings and fences on the farm needed extensive repairs and that plaintiffs had inspected them and both parties knew the condition of the buildings and fences on the farm.

Plaintiffs sued defendant in the Common Pleas Court for damages for breach of said contract. The petition contained two causes of action. The first cause of action, after setting forth the contract, alleged, in substance, that plaintiffs performed all the conditions on their part to be performed, but that both horses were older than represented and that one was balky and that plaintiffs were obliged to sell it for $77; that one cow was so lame it could not walk and that they refused to accept it; that the grain binder, hay loader and surrey were in such a bad state of repair that they were useless and that plaintiffs refused to accept them—all to their damage in the sum of $403.

For their second cause of action plaintiffs alleged that they submitted to defendant a list of material necessary to repair said buildings and fences, but that defendant failed and refused to furnish proper and sufficient material to make the necessary repairs to make the buildings inhabitable and usable for the purposes intended, and further alleged that—

"Plaintiffs further aver that by reason of the failure of the defendant to furnish said lumber and materials, they were forced to stay in two rooms in said house and they suffered great inconvenience and discomfort because of the condition of the house; that their cattle and other live stock did not have proper shelter, and the fences were in such condition that stock could not be kept out of the tillable part of the farm; that on or about the 9th day of May, 1928, plaintiffs were compelled by reason of the conditions herein set forth, and the unhealthy and untenantable condition of the house, to dispose of their farm implements, livestock and other personal property and to vacate said farm and they have not lived there nor have they used said farm or any part thereof since that date."

—all to their damage in the sum of $5000, making the total damages claimed $5403.

The answer and cross-petition denied that defendant failed and refused to furnish said material, and alleged that by reason of plaintiffs' failure to make the repairs and farm in a husbandman-like manner as agreed upon, he was damaged in the sum of $650, for which he asked judgment and that the petition be dismissed.

The reply denied the refusal to make repairs and alleged that by reason of defendant's failure to furnish material to make the repairs it was impossible for them to remain on the farm, and further denied that defendant had suffered

any damage by reason of their removal from the farm, as he took possession of it and rented it to others.

The case was tried to a jury, which returned a verdict for plaintiffs for $3666, and found against defendant on his cross-petition, and on which verdict judgment was entered and motion for new trial overruled.

The case is here on petition in error to reverse that judgment.

Two alleged errors are complained of: one that the court erred in its charge on the measure of damages, and the other that the verdict is excessive and manifestly against the weight of the evidence.

First, is there error in the charge on the measure of damages on the issue of the alleged failure of defendant to furnish material to make the proper and reasonable repairs to the buildings and fences?

On this point the court charged as follows:

"Upon this point you are instructed that the measure of damages in such a case would be the difference between the rent to be paid and the rental value of the premises as they were without such repairs."

Counsel for neither side cite any Ohio cases directly on the question at issue and we find none. Those cited by counsel for defendant are for damages for injury to the person or property of the lessee by reason of the defective condition of buildings and failure to repair, and have little bearing upon the above-quoted part of the charge.

Counsel for plaintiffs cites authorities more particularly in reference to plaintiffs' claim for damages for inconvenience and loss of crops by reason of the failure of defendant to furnish material to repair fences and buildings and along the line that recoverable damages are such as arise naturally or which may reasonably be supposed to have been within the contemplation of the parties at the time they made the contract, but the authorities cited do not support the measure of damages charged by the court.

The case of **Hough v Stone, 21 Oh Ap 444,** was an action against the lessor for failure to furnish all necessary crates which lessor had agreed to supply for harvesting a crop of onions which were cultivated by lessee upon the shares. In this case the onions were grown and on hand and the court held that the measure of damages was the difference between the fair market value of the lessee's share at the place of division with and without the required number of crates.

In the case of Spencer v Hamilton, 18 S E. 167 (North Carolina Supreme Court), the lessor agreed to clean out certain ditches on the leased land, which he failed to do and which caused the land to be flooded and prevented the lessee from obtaining a full crop; and the court held that the measure of damages was the difference between the value of the crop made and what would have been made if the ditches had been cleaned, less the cost of caring for such additional yield. In other words, the lessee was entitled to recover only for the decrease in the "net yield" caused by lessor's failure to clean out the ditches as he agreed to do. The crop had also been grown in this case.

In the case of Daly v Piza, 90 N. Y. Supp. 1071, the premises were rented by a written lease for rooming house purposes, and by an oral independent agreement the lessor agreed to make certain repairs prior to the beginning of the lease, which he failed to do, and the court held that the measure of damages was the rental value of the rooms rendered unfit for use during the fixed time she was deprived of them by lessor's default.

It will be noted that in none of these cases is the rental stipulated in the lease referred to as the measure of damages, but are all based upon the fair market value, and in none of them is any claim made or allowed for inconvenience and discomfort and that there was evidence offered to support the measure of damages adopted in the respective cases.

Tiffany on Landlord and Tenant, Vol. 1, p. 589, says the rent fixed is only "regarded as prima facie the actual rental value".

While the decisions in other states are not uniform. and some cases hold that the measure of damages is the difference between the rental value fixed in the lease and the rental value without the repairs, we find the weight of authority is to the effect that the measure of damages in cases where the lessor fails to make the repairs agreed upon is the difference between the rental value of the premises in the condition they were in without such repair and what the rental value would have been if the repairs had been made.

The decisions holding to the above rule also point out that what would be the rental value if the repairs had been made, is not to be determined by the rental stipulated in the lease, for the reason that although such amount may be its true value, it may also be too much or too little, and if it be either way the one benefitted is entitled to such profit. Hence, while the amount stipulated may be competent as some evidence bearing upon such rental value, it is not conclusive and binding.

Tiffany on Landlord and Tenant, Vol. 1, p. 589.

16 R. C. L.. p. 1055, sec. 576.

We therefore follow the rule above stated and which we think is the most equitable and just among ▆▆▆▆▆ ▆ those adopted by the courts in other states, and believe it the one that should be adopted in Ohio, and thus hold that the court erred in its charge on the measure of damages, and that it was prejudicial.

There is much conflict in the evidence pertaining to the condition of the items mentioned in the first cause of action and whether defendant offered any substitutes for the one horse and several of the cows, and whether or not defendant refused to furnish all proper and necessary material to make all proper and necessary repairs, it being defendant's contention that he freely offered everything that he agreed

to do. However, we think it can be said that the undisputed evidence shows and that the witnesses on both sides admitted that the buildings and fences on said farm were very much out of repair, that the house was uninhabitable and the other buildings practically unfit for the purposes intended, and that plaintiffs had to repair two rooms in the house before they could move in, so as to have a place to stay, and that they afterwards made some other minor repairs about the other buildings and fences, and that defendant furnished the material for a part, if not all, of said repairs; that plaintiffs used another room in the house in which to keep young chickens, and remained on said farm in that condition for the period of a year, when they sold the live stock and machinery received from defendant and left the farm for the claimed reason that defendant refused to furnish proper and sufficient material to make said house and other buildings reasonably fit for the purposes for which they were intended.

Under this state of facts, it appearing that plaintiffs had paid the rent in full for the three years, and the above-mentioned rule, and if the jury should find from the evidence that plaintiffs were justified in leaving said farm. because defendant refused to furnish material to make proper repairs, and it further appearing that when plaintiffs moved out that defendant took charge of and re-rented said farm, we think that the true and fair measure of damages on the lease would be the fair rental value ▆▆▆▆▆ ▆ of the farm in the condition it would have been in had proper repairs been made as contemplated by the lease, less the fair rental value. if any, for the first year, due to the limited repairs that were made by plaintiff.

Of course, if the jury should find that defendant did refuse to furnish such material and should further find that after the limited repairs were made with the limited material furnished as claimed by plaintiffs, the buildings

and fences were not reasonably fit for the purposes intended and that the farm with the buildings and fences in such condition was therefore of no rental value even though plaintiffs did stay there and exist and do such farming as they could during the first year for their own protection and in the hope that defendant would furnish proper material, all as claimed by them, then plaintiffs would be entitled to the fair and reasonable rental value of the farm for the whole three years.

In this connection it may be proper to call attention to the fact that the court gave no rule or measure of damages and that none was asked by counsel on either side, in reference to the alleged damages concerning the live stock or machinery, and that there is no evidence in the record as to their value in the condition they were in or their value if they had been as represented, except the estimated value placed upon them in the bill of sale, and that there is no evidence as to the rental value of the farm at any time except what is stated in the bill of sale and the lease. We are also of the opinion that their values were not such as would come within the class of "common knowledge", so that the jury could not exercise their common knowledge judgment in arriving at the amount of damages, but that there should be some evidence to show the rental value if the repairs had been made and its value in the condition it was in if it was of any value at all, and the same thing is true as to damages concerning the live stock and machinery set forth in the first cause of action.

As to the allegations in the petition concerning the inconvenience and discomfort of plaintiffs because of the defective condition of the buildings and fences by reason of defendant's failure or refusal to furnish material for their repair, we are clearly of the opinion that those allegations cannot be considered as items of damage in the instant case. By analogy, this view seems to be supported by the holdings of the courts in **Shinkle, etc. Co. v Birney, 68 Oh St 328; Marlow v Shiffman, 20 O. D. 209, 9 N. P. (N.S.) 533**, affirmed by Circuit Court in **18 O. L. R. 209**; and **Cincinnati v Evans, 5 Oh St 594**. In those cases recovery was refused for injuries to the person in one case and to property in the other, resulting from the defective condition of the leased buildings. It would seem to follow that if a lessee cannot recover damages for actual injuries to the person or property, he surely cannot recover for mere inconvenience and discomfort.

However, while there is some testimony concerning inconvenience and discomfort and the loss of crops and care of livestock by reason of poor fences and buildings, there is no evidence concerning the amount or value of such loss or what crops were raised or could have been raised if the fences and buildings had been repaired as claimed by plaintiffs. Consequently there is nothing in the record upon which a verdict could be based for such damages, even if plaintiffs were entitled to recover therefor.

Moreover, when damages are claimed and allowed for depreciation in rental value, it would seem to be allowing double damages to allow further damages for inconvenience and discomfort or loss of crops, which would seem to be more in the nature of loss of profits and which are not regarded as proper items of damage.

There being no evidence as to the measure of damages other than the estimated values placed upon the various items of livestock and machinery and the rental value of the farm as set forth in the bill of sale and the lease, and admitting them at their face value, the total verdict, under the rule as charged by the court, could have been for only $403, plus $1800, making $2203, plus interest. We therefore find that the verdict is excessive and not sustained by the evidence.

Judgment reversed for error in the

charge and as excessive and not sustained by the evidence.

PARDEE. PJ. and WASHBURN, J., concur in judgment.